Elsie **HARRIS** and **Elaine Harris Few, as Personal Representatives of the Estate of Forrest J. Harris, Jr., deceased, Plaintiffs,**

v.

**GREAT SOUTHERN LIFE INSURANCE COMPANY, Defendant,**

v.

Elsie **HARRIS** and **Elaine Harris Few, as Personal Representatives of the Estate of Forrest J. Harris, Jr., deceased, Employee Fringe Benefits, Inc. and State Exchange Bank, Counterclaim Defendants.**

No. 82–666–Civ–J–B.

United States District Court, M.D. Florida, Jacksonville Division.

March 11, 1983.

James C. Rinaman, Jacksonville, Fla., for Great Southern Life Ins. Co., cross-claimant and counterclaimant in interpleader.

Robert F. Spohrer, Jacksonville, Fla., for Harris and Few, Representatives of Harris Estate.

C. Harris Dittmar, Jacksonville, Fla., for Employee Fringe Benefits.

Frederick L. Koberlein, Lake City, Fla., for State Exchange Bank.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case is before the Court on Plaintiffs' Motion to Dismiss Defendant's Counterclaim and Cross-Claim in Interpleader and to Dismiss Employee Fringe Benefits, Inc. and State Exchange Bank as Cross-Defendants, filed herein on December 16, 1982. The Court also has for consideration Defendant Employee Fringe Benefits, Inc.'s Motion to Dismiss Counterclaim and Cross-Claim in Interpleader of Defendant Great Southern Life Insurance Company, filed on December 22, 1982. Finally, the Court has before it Cross-Defendant The State Exchange Bank's Motion to Dismiss Counterclaim and Cross-Claim in Interpleader of Defendant Great Southern Life Insurance, filed on January 7, 1983. Each of the above-named motions challenges the propriety of Great Southern Life Insurance Company's (hereinafter "GSL") attempt to interplead the various parties. Before proceeding to a discussion of the merits of the instant motions, the Court finds it necessary to set forth in some detail the events leading up to the present controversy.

## HISTORY

In September of 1975, GSL issued two life insurance policies with face amounts of $400,000 and $100,000 on the life of Forrest J. Harris, Jr. In September of 1976, the beneficiary of the policy was changed from Hidden Hills North Development Company to Employee Fringe Benefits, Inc. (hereinafter "EFB"). Ronald Garelick, GSL's sales agent who originally sold the policies to Harris, was the predominant owner of EFB.

On July 23, 1977, Harris was reported as missing. On August 2, 1977, the authorities found the skeletal remains of Harris' body, which revealed that he had been shot five times before being hidden. Larry Johnson, one of the suspects in the murder, acting under full immunity, led the police to the body. On the same date on which Harris' body was uncovered in Jacksonville, Florida, Garelick met with claims representatives of GSL in Houston, Texas concerning the life insurance policies in which EFB held a beneficiary interest. Garelick ultimately agreed to rescind the policies in exchange for $35,000. Three days later, Garelick died.

Significant inroads were made in the investigation of Harris' murder. In fact, on the date on which Garelick died, John Barfield was taken into custody in connection with the killing and was charged with, *inter alia*, conspiracy to commit the murder. Others were also arrested for their roles in the alleged conspiracy to murder Harris. In addition to Barfield, arrested were Huey Palmer, Gerry Sapp, and Ernest Downs. All charges were subsequently dropped

against Palmer in exchange for his testifying for the state. Sapp pleaded guilty to conspiracy to commit first-degree murder in exchange for a favorable recommendation from the state at sentencing. Downs, the alleged trigger man, was convicted at trial and sentenced to death. His conviction was affirmed on appeal. *Downs v. State,* 386 So.2d 788 (Fla.1980). Barfield also went to trial and was convicted. His conviction was affirmed on appeal, but the Supreme Court of Florida commuted his sentence from death to life imprisonment. *Barfield v. State,* 402 So.2d 377 (Fla.1981). Though Garelick had died, he figured prominently in the criminal actions. During Barfield's trial, as well as in the course of the investigation leading up to that trial, evidence was disclosed to support the allegation that Garelick was the driving force behind the murder of Harris.[1]

Following the conclusion of the criminal trial proceedings, two civil actions were initiated. EFB brought one such action in the Circuit Court, Fourth Judicial Circuit, in and for Duval County (hereinafter "state court"), against GSL, claiming the proceeds of the two policies as the named beneficiary. The estate of Forrest J. Harris, Jr. (hereinafter "Estate") filed the other suit, also in state court, against GSL, also claiming the proceeds under both life insurance policies. The Estate's theory of recovery was, essentially, that Garelick had directly procured Harris' death, that Garelick was the alter ego of EFB, and as a result EFB was precluded as a matter of law from recovering the proceeds. With no other named beneficiaries under the policies, the Estate contended that it would be next in line to recover. GSL defended against both claims on the ground that Garelick had rescinded the policies in August of 1977, thereby foreclosing any recovery under them.[2]

In May of 1979, GSL removed the Estate's action to federal court on the basis of diversity of citizenship. Meanwhile, EFB's suit drew closer to its scheduled trial date. Approximately two months prior to the date on which the trial was to commence, the Estate petitioned to intervene, contending that similar issues were present in each case and that intervention would facilitate judicial economy. Both GSL and EFB opposed the Estate's intervention and the state court subsequently denied the Estate's motion.

Shortly before the state case was to be tried, EFB and GSL filed cross-motions for summary judgment. Because EFB was the named beneficiary, the only controversy between it and GSL was the validity of the rescission attempt by Garelick. The trial court considered the opposing positions and concluded that the purported rescission agreement was invalid. Therefore, the Court entered a "Partial Summary Judgment," finding that EFB was entitled to collect the policy proceeds from GSL. The court left for future determination the amount of attorney's fees to which EFB was entitled and the propriety of The State Exchange Bank's (hereinafter "SEB") counterclaim against EFB. GSL appealed the trial court's ruling.

While the state appeal was pending, the Estate's claim in federal court came to trial. In order to prevail, the Estate was required to demonstrate (1) that the rescission agreement was invalid, (2) that Garelick procured Harris' murder, and (3) that Garelick was the alter ego of EFB. The Estate called Barfield and Harry Murray, Barfield's cellmate, to testify in an attempt to prove Garelick's involvement. However, both witnesses invoked their fifth amendment privilege against self-incrimination and refused to give any testimony. Realizing that

---

**1.** The Supreme Court of Florida, in its opinion in Barfield's appeal, sets forth in detail Garelick's alleged involvement in the conspiracy in addition to providing a synopsis of the facts surrounding Harris' death. *See Barfield v. State,* 402 So.2d 377, 379–80 (Fla.1981).

**2.** In the Estate's case against it, GSL asserted, in addition to the rescission agreement, that Garelick did not procure Harris' death. This being an essential element of proof in the Estate's case, GSL maintained that it was not liable to the Estate. This issue is also present in the instant case and remains untried.

their anticipated proof was not going to materialize, the Estate moved for a voluntary dismissal without prejudice. The Court granted the motion upon the condition that the Estate reimburse GSL for all costs incurred after the pretrial conference in the event that the Estate intended to refile. The Estate complied with the Court's conditions and filed the instant action on June 22, 1982.

On October 14, 1982, the District Court of Appeal of Florida, First District, affirmed the state trial court's ruling that the purported rescission agreement between Garelick and GSL was invalid. *Great Southern Life Insurance Co. v. Employee Fringe Benefits, Inc.,* 420 So.2d 407 (Fla. 1st DCA 1982). GSL did not seek further review in the Supreme Court of Florida. Its position concerning the rescission defense having been rejected by the state courts, GSL filed a motion for leave to proceed in interpleader in this case on November 3, 1982. The Court permitted GSL to file its counterclaim and cross-claim in interpleader pursuant to Rule 22, F.R.Civ.P., and the instant motions to dismiss followed.

## ANALYSIS

Both Rule 22 and 28 U.S.C. § 1335, the federal interpleader statute, are designed to protect an entity holding a fund from multiple liability and numerous lawsuits relating to the same fund. Interpleader permits the stakeholder to compel persons asserting conflicting claims to the fund to adjudicate their rights in a single action. *See Lummis v. White,* 629 F.2d 397, 399 (5th Cir.1980), *cert. granted,* 452 U.S. 904, 101 S.Ct. 3028, 69 L.Ed.2d 404 (1981); *Dakota Livestock Co. v. Keim,* 552 F.2d 1302, 1306 (8th Cir. 1977). The remedy developed in equity and is governed by equitable principles. Moreover, the interpleader rule is to be construed liberally. *Id.*

Here, GSL maintains that it is a stakeholder of the life insurance policy proceeds, that cross-claim and counterclaim defendants have asserted conflicting claims to the funds, and that interpleader is properly invoked to protect it from the threat of double liability. Each of the claimants makes the same response to GSL's assertion. They argue that GSL is barred by laches from bringing this action in interpleader and that the state court decision in favor of EFB is *res judicata* in this Court.

The substance of the parties' laches argument is that GSL had the opportunity in 1979, when the two suits were initiated in state court, to invoke the interpleader doctrine. They further point out that GSL had the opportunity to have all claims consolidated into one action when the Estate moved to intervene in the case between GSL and EFB. GSL opposed the motion. Therefore, claimants contend, GSL made a deliberate decision to forego the protection available to it under either interpleader or consolidation. Claimants contend that GSL has, therefore, waived its right to resurrect these procedural barriers with the instant action against it by the Estate.[3]

While the claimants' argument is not without substance, it is not conclusive. Though GSL did, in fact, oppose the Estate's attempted intervention in the prior state action, the Court finds it significant that EFB also opposed the Estate's attempt. It would be no more equitable to reward EFB for its position on the proposed intervention than it would be to penalize GSL for its stance. Furthermore, neither the Estate nor SEB would be prejudiced as their claims could be fully considered in the interpleader action. Finally, the Court notes that the interpleader rule is to be interpreted liberally in order to prevent stakeholders such as GSL from exposure to double liability. In sum, were the Court unable to perceive any legal impediments to

---

**3.** When speaking of "claimants," the Court is referring to EFB, the Estate and SEB. SEB has adopted the positions set forth by EFB and the Estate concerning the propriety of this interpleader action and has added one additional equitable consideration. It points out that it

has been seeking to establish its claim for over four years, including several suits in both state and federal courts, and that GSL should not be permitted to start the process anew in the form of a federal interpleader action.

GSL's interpleader claim, the Court would not prohibit it in equity.

However, the claimants' legal arguments concerning the effect of the prior state court judgment appear to be meritorious. At the outset, the Court notes that this is a diversity action in which the Court is merely adjudicating state-created rights. The Court is, therefore, to be considered another court of the state and is unable to afford relief if the right to such relief is made unavailable by the state. *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945); *Cleckner v. Republic Van & Storage Co.,* 556 F.2d 766, 768 (5th Cir.1977). Under Florida law, an existing final judgment rendered on the merits by a court of competent jurisdiction is conclusive of the rights, questions, and facts in issue, as to the parties involved in the suit, in any other action in the same or in another court. *See Gordon v. Gordon,* 59 So.2d 40 (Fla.1952); *Tucker v. Walker,* 335 So.2d 636 (Fla. 2d DCA 1976). Because the state judgment clearly found that "Plaintiff Employee Fringe Benefits, Inc. is entitled to recover from Great Southern Life Insurance Company the face amount of [the] policies," GSL's liability to EFB has been established. This Court must apply Florida's *res judicata* principles. *See Anderson v. Moorer,* 372 F.2d 747, 751 (5th Cir.1967).

GSL's argument that the judgment is not final, thereby stripping it of its *res judicata* impact, is without merit. The judgment determined the substance of EFB's claim, leaving only questions such as attorney's fees and SEB's claim against EFB to be resolved. As held in *Conboy v. City of Naples,* 226 So.2d 108, 110 (Fla. 2d DCA), *cert. denied,* 234 So.2d 117 (Fla.1969), "judgment affecting one but not all of multiple defendants where the claim adjudicated is separable from and collateral to the rights asserted in the action . . . is final." *See also General Accident Fire & Life Assurance Corp. & Kellin,* 391 So.2d 305, 306 (Fla. 4th DCA 1980) (fact that attorney's fees and similar matters remained did not deprive judgment of finality, despite label of partial judgment). Finally, the Court notes that in accepting the appeal, the First District Court of Appeal implicitly found the judgment to be sufficiently final to be appealable. *See Great Southern Life Insurance Co. v. Employee Fringe Benefits, Inc.,* 420 So.2d 407 (Fla. 1st DCA 1982). Accordingly, the Court concludes that under Florida law the judgment is final and *res judicata* has attached.

The Court must next address the effect of that judgment in this forum. Through 28 U.S.C. § 1738, Congress has imposed on federal courts the obligation to give full faith and credit to judgments entered by state courts of competent jurisdiction. *Davis v. Davis,* 305 U.S. 32, 39–40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1938). The federal court presented with a state court judgment is required to give that judgment the same force and effect as it has in the state in which it was rendered. *Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 274 (2d Cir.1977); *Hazen Research, Inc. v. Omega Minerals, Inc.,* 497 F.2d 151, 153 (5th Cir.1974). In Florida courts, GSL is precluded from contesting its liability to EFB. More importantly, Florida will not permit GSL to avoid the consequences of the judgment by employing interpleader:

The law in Florida, as well as generally throughout the country, holds to the proposition that in order for a plaintiff to be entitled to relief by interpleader, he must apply for that relief before a judgment at law has been rendered in favor of any of the claimants to the common fund.

*Montgomery v. Traveler's Indemnity Co.,* 192 So.2d 779, 781 (Fla. 1st DCA 1966). Because GSL did not apply for interpleader relief until after a judgment had been rendered in favor of one of the claimants, the Court is prohibited, to the same extent as a Florida state court would be, from granting the relief requested. To permit interpleader herein would be to allow GSL to avoid the judgment obtained against it in state court by EFB. As noted above, Florida law prohibits such an occurrence. Thus, it appears that GSL's attempted interpleader ac-

tion must fail and that claimants' motions to dismiss should be granted.

## CONCLUSION

This case presented the question of whether a prior state court judgment in favor of one of the proposed claimants against the proposed stakeholder awarding the claimant the funds in question serves to preclude the proposed stakeholder from proceeding in interpleader. The Court found that while equitable defenses such as laches would not bar interpleader in this case, due consideration to the effects of the state judgment requires a dismissal of the action in interpleader.

In reaching this conclusion, however, the Court found a paucity of case law on the question. In fact, neither the parties nor the Court were able to discover a case in which the precise issue presented in this case was confronted. Therefore, in determining whether GSL is entitled to proceed in interpleader, the Court drew upon generally accepted principles of *res judicata* and federal-state considerations. In doing so, the Court has arrived at what it perceives to be the proper disposition of this matter under the law. However, given the lack of precedent for this factual scenario, the Court believes that a prompt appeal of this order, if GSL is so inclined, would materially advance the ultimate termination of this litigation. As this order may be deemed interlocutory, thereby barring an immediate appeal, *see New Amsterdam Casualty Co. v. United States,* 272 F.2d 754 (5th Cir.1959) (dismissal of petition in interpleader held interlocutory where plaintiff's claim remained after dismissal), the Court would entertain a motion for certification of the interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

In accordance with the foregoing, it is

ORDERED:

1. That Plaintiffs' Motion to Dismiss Defendant's Counterclaim and Cross-Claim in Interpleader and to Dismiss Employee Fringe Benefits, Inc. and State Exchange Bank as Cross-Defendants, filed herein on December 16, 1982, is granted.

2. That Defendant Employee Fringe Benefits, Inc.'s Motion to Dismiss Counterclaim and Cross-Claim in Interpleader of Defendant Great Southern Life Insurance Company, filed herein on December 22, 1982, is granted.

3. That Cross-Defendant The State Exchange Bank's Motion to Dismiss Counterclaim and Cross-Claim in Interpleader of Defendant Great Southern Life Insurance Company, filed herein on January 7, 1983, is granted.

4. That the Court will on this date enter a Dismissal of Great Southern Life Insurance Company's Counterclaim and Cross-Claim in Interpleader, filed herein on December 8, 1982.

5. That Defendant Employee Fringe Benefits, Inc.'s Motion to Require Interpleader Plaintiff Great Southern Life Insurance Company to Increase the Amount of Funds Deposited in the Court's Registry, filed herein on December 30, 1982, is denied as moot.