437 So.2d 138 (1983)
John MICHAEL, Appellant,
v.
STATE of Florida, Appellee.
No. 60712.
Supreme Court of Florida.
July 14, 1983.
Rehearing Denied September 29, 1983.
*139 Jerry Hill, Public Defender and David A. Davis, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen., and Frank Lester Adams, III, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
John Michael appeals his conviction of first-degree murder and sentence of death. We have jurisdiction[1] and affirm both the conviction and sentence.
On July 3, 1980 the body of 83-year-old Fern Umble was found near Tarpon Springs, Florida. She had been severely beaten, strangled, and stabbed. Miss Umble had moved to Largo, Florida, in June of 1980 with 37-year-old John Michael. The two had known each other for some time while in Ohio and had a very close relationship. Miss Umble, a very religious woman, looked to Michael for advice and support in business and religious matters; both referred to him as a prophet of God. In February of 1980 she changed her will to leave everything to Michael to "continue the work of the Lord." The original will left her sizeable estate to her brother, to Oral Roberts University, and to several nationally known evangelists.
In the early part of July an acquaintance of Michael's, a sixteen-year-old boy on summer vacation, moved in with the couple for a few days. Michael and the boy had a homosexual affair. Miss Umble and Michael had a small argument on the morning of July second. Michael took the boy to St. Petersburg, saying that he wanted to talk with Miss Umble alone. Several hours later Michael returned for the boy and told him that he had kicked her out of the house and had taken her to a park where she could catch a limousine to the airport. He further told the boy that Miss Umble had spilled ketchup on the living room rug creating a large stain. The two went to a sporting goods store where Michael bought the boy a thousand dollars' worth of scuba equipment.
On July 11 Michael reported Miss Umble missing. He told the police that on the morning of July second Miss Umble said that she wanted to make a surprise visit to her friends in Ohio. She asked to be taken to a local K-Mart so that she could buy some clothes and catch a taxi to the airport. That was the last time he saw her. He called her friends in Ohio several times in the next few days, and, when no one had seen her, he reported her missing.
On July 15 Michael identified a picture of the body and the clothes, quilt, bathrobe, and towel found with it. The body was clothed in a different dress from the one Miss Umble had worn on leaving, and Michael *140 said that she must have returned to their house trailer from the K-Mart store because she had not taken the other items with her when she left. The police became suspicious of Michael because of the inconsistencies in his story and searched the trailer. The large ketchup stain was found to be blood that matched Miss Umble's type. Fibers and hairs from the trunk of their Cadillac matched those found on the victim's body. Tire tracks found near the body came from their automobile. A luminal test for bloodstains found a large stain that could have resulted from the victim being dragged into her bedroom and hidden in the closet. The police found Miss Umble's will in a lock box in Michael's room and confiscated it. On July 22 Michael boarded a plane for Cleveland and disappeared until arrested in Arizona on the second of August.
Michael was in the Pinellas County jail when indicted on September 4, 1980. He confessed to a fellow inmate, Jeffery Allen, on September 5th and on September 10th Allen contacted Detective Bolle and reported Michael's confession. A similar set of events occurred with another inmate, Thomas Carmichael. Allen and Carmichael volunteered the incriminating statements to Detective Bolle without any prior inducement. While in jail Michael wrote Allen several love letters, one of which was introduced at trial. Michael had been found competent to stand trial, but there was testimony that he suffered from mental or emotional problems.
Michael urges seven points on appeal. After reviewing the instant record, we find Michael's conviction supported by competent substantial evidence and the issues raised show no reversible error.
Michael contends that the trial court erred in not suppressing the incriminating statements made to his fellow inmates because their admission violated his sixth amendment right to counsel. In United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the United States Supreme Court held that statements made to a fellow inmate acting as a paid government informant are inadmissible because they violate an accused's right to counsel. This Court applied Henry in Malone v. State, 390 So.2d 338 (Fla. 1980), cert. denied, 450 U.S. 1034, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981), and granted a new trial because the state had asked Malone's cellmate to obtain the incriminating statements that were used at trial.
Not all incriminating statements made to cellmates while in custody, however, are inadmissible. In Barfield v. State, 402 So.2d 377 (Fla. 1981), an inmate's testimony concerning incriminating statements was admitted after a finding that the inmate had not acted pursuant to government instruction. In Barfield the inmate approached the authorities on his own initiative after hearing the incriminating statements. See Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
The facts in the instant case are similar to Barfield. Michael was in custody when indicted on September 4, 1980. He confessed to Allen on September 5, and on September 10 Allen volunteered the statements to Detective Bolle. That was the first time any law enforcement agent had talked with Allen about the Michael investigation. A similar sequence of events occurred with the confession to Carmichael.
Michael contends that, because Allen and Carmichael had been used as informants during prior prison riots, they continued to be agents of Detective Bolle. Detective Bolle, however, had been assigned to the Pinellas County jail exclusively to investigate crimes occurring wholly within the jail and to obtain intelligence on any possible riots or disturbances that might happen in the jail. Pursuant to his job of uncovering possible riot or disturbance conditions it was necessary to call upon prisoner witnesses to give testimony. He used Allen and Carmichael as informants in those cases, but had not requested them to supply information about the instant case. We do not agree with Michael's contention that once an inmate is used as an informant, he becomes *141 an agent for the state in all subsequent situations where he is an informant.
Michael also contends that the evidence presented by the state was not sufficient to prove him guilty beyond a reasonable doubt and that the evidence does not exclude a reasonable hypothesis of innocence. We disagree and hold that there is substantial, competent evidence in the record to sustain Michael's conviction. We recognize that, when the only proof of guilt is circumstantial, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. Thomas v. State, 374 So.2d 508 (Fla. 1979), cert. denied, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980). But here, in addition to the circumstantial evidence, we have Michael's confessions to inmates Allen and Carmichael. This constitutes direct evidence of the crime making the circumstantial evidence rule inapplicable.
Michael urges that the warrant obtained to search the house trailer was invalid because the supporting affidavit lacked probable cause. After review of the affidavit filed by the detective in charge of the investigation, we find that there was sufficient probable cause for the warrant to be issued.
Michael also argues that the police exceeded the authority of the warrant when they seized a small gray box that contained personal papers and Miss Umble's will. The police had the authority to search the contents of the box for possible evidence of the crime, and the discovery and use of the will was proper. Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976).
Michael further contends that the trial court erred in admitting a letter that he wrote to fellow inmate Jeffery Allen concerning his love and homosexual desires for Allen. After reviewing the record, we find no error in admitting the letter. Michael's homosexual preferences were already before the jury, and the trial court found the letter relevant in determining the voluntariness of Michael's confession to Allen.
Michael also challenges his sentence of death which the court imposed after the jury had recommended the death penalty. The trial court found as three aggravating circumstances that the murder was: (1) committed for pecuniary gain; (2) exceptionally heinous, atrocious, or cruel; and (3) committed in a cold, calculated and premeditated manner. The only mitigating circumstance found by the trial court was Michael's lack of a significant history of prior criminal activity.
Michael contends that the trial court failed to consider his mental and emotional disturbances in mitigation. In support of this contention, Michael introduced the report of one psychiatrist which expressed the possibility that he might not have been competent to stand trial. Evidence of incompetency to stand trial is not evidence of a defective mental condition at the time of commission of the offense. The psychiatrist who questioned his competency to stand trial could not form an opinion as to his competency at the time of the murder, nor did he express an opinion on any statutory mental mitigating circumstance. Further, Michael's mother testified that she had no knowledge of any significant psychological problems over the last fifteen years. Therefore, we find no error in the trial court's finding that the mental mitigating factors[2] did not apply. Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982).
Michael further contends that the aggravating factors of heinous, atrocious, and cruel and cold, calculated, and premeditated should not apply because his mental and emotional problems caused the murder. He cites two cases,[3] reasoning that in both *142 the death sentences were reduced to life imprisonment because the mental and emotional disturbances of the defendants directly caused the murders and rendered these aggravating factors inapplicable. In both cases, however, the aggravating factors were found to apply but were outweighed by the mitigating factors. A defendant's emotional and mental problems do not affect the application of these two aggravating factors, but, rather, affect the weight given the mitigating factors. There was sufficient evidence for the trial court to find that the aggravating factor of committed in a cold, calculated, and premeditated manner was proven beyond a reasonable doubt.
Finally, we find no merit in Michael's contention that the aggravating factor that the murder was committed for pecuniary gain was not proven beyond a reasonable doubt. There is sufficient evidence in the record for the jury and the trial court to apply this aggravating factor. In the findings in support of the sentence of death the trial court stated:
a. The capital felony was committed for pecuniary gain. Defendant, Michael, in the early part of 1980 was present when the victim, Fern Umble, revoked her will leaving her estate to various evangelistic entities and her brother and executed a new will bequeathing her entire estate to defendant, Michael. The defendant after murdering Miss Umble assumed possession of the small strong box in which the will had been placed for security.
To insure that there would be no question that the victim, Umble, was dead and her estate subject to probation defendant, Michael, deposited the body in a place where it would be expected to be found within a reasonable time and wrapped it in a blanket or comforter which could indisputably be identified as belonging to the victim, Umble; this blanket or comforter had written on it the name of Miss Umble's sister, Myrtle, and the year 1903.
Circumstances indicate that at least one of the motives for the death of Miss Umble was pecuniary gain which the defendant hoped to obtain as the sole beneficiary of her estate.
Finding no error, we affirm both the conviction and sentence.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] § 921.141(6)(b), (f), Fla. Stat. (1979).
[3] Huckaby v. State, 343 So.2d 29 (Fla.), cert. denied, 434 U.S. 920, 98 S.Ct. 393, 54 L.Ed.2d 276 (1977); Jones v. State, 332 So.2d 615 (Fla. 1976).