588 So.2d 221 (1991)
Jose A. MAQUEIRA, Appellant,
v.
STATE of Florida, Appellee.
No. 74913.
Supreme Court of Florida.
August 29, 1991.
Rehearing Denied November 18, 1991.
Calianne P. Lantz, Sp. Asst. Public Defender, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Jose Maqueira appeals his convictions for the first-degree murders of Raquel and Miguel Rodriguez, armed burglary, and attempted armed robbery of the Rodriguez's home. He also appeals the sentence of death imposed for the murder of Raquel Rodriguez. Our jurisdiction is mandatory according to article V, section 3(b)(1), Florida Constitution.
Raquel and Miguel Rodriguez were shot to death in their home in 1983. The only witness to the crime was the victims' daughter, who lived in a garage apartment adjacent to the Rodriguez's house. According to the daughter's trial testimony, she came home from buying flowers on the day of the murders and found her mother *222 sitting on the porch. After she and her mother spoke, she went to her apartment. Shortly thereafter, she heard two shots about three seconds apart. As she ran to the house she saw two men running away from the house. They entered a car parked on the street and drove away. She found her parents in the house. Both had been shot. Mr. Rodriguez was pronounced dead at the scene. Mrs. Rodriguez died a few hours later.
The murders remained unsolved until 1987, when prison inmate Ramiro Gonzalez informed a Metro-Dade police officer that Maqueira, who was imprisoned on unrelated charges, wished to speak to him regarding Maqueira's involvement in a homicide in 1983 in which a husband and wife were killed during an attempted robbery of their home. The Metro-Dade officer contacted City of Miami Police Detective Cadavid, who determined that Maqueira was referring to the Rodriguez murders.
Detective Cadavid and his partner went to Martin Correctional Institute, where they talked to Gonzalez before meeting Maqueira. Gonzalez told Cadavid what Maqueira had related to him. Detective Cadavid then interviewed Maqueira, who insisted that Gonzalez be present. After signing a waiver of rights form, Maqueira confessed to the crimes. He told Detective Cadavid in a taped statement that he, Carlos Villavicencio, and a man named Lazaro planned to rob the home of an older couple who owned a gas station. Lazaro had information that a safe in the house contained $65,000 and claimed to have a key and combination to the safe. The three men drove past the house on two or three occasions, awaiting an opportunity. On the day of the murder, Lazaro gave Villavicencio and Maqueira guns, and the two drove to the house in Lazaro's car. Lazaro followed in another car. When they passed the house they saw that the front door was open. Lazaro waited on the street corner. Villavicencio and Maqueira entered the house. Villavicencio went into a room on the right. Maqueira went toward the Florida room, where he saw a woman talking on the telephone. He hid behind the sofa. Villavicencio confronted Mr. Rodriguez in a bedroom and shot him. Upon hearing the shot, Maqueira ran toward the bedroom and saw a man lying on the bed. The woman was running toward the bedroom. Maqueira told Detective Cadavid that as the woman approached, Villavicencio put a gun to his head and repeatedly told him to shoot the woman. Maqueira shot her.[1]
Upon Maqueira's conviction, the jury, by a vote of nine to three, recommended the death penalty for the murder of Raquel Rodriguez. The jury recommended life imprisonment for the death of Miguel Rodriguez. Following the recommendation, the judge sentenced Maqueira to death for the murder of Mrs. Rodriguez, finding four aggravating and no mitigating circumstances. Maqueira was sentenced to life imprisonment for Mr. Rodriguez's murder.
Maqueira claims that the trial court erred by denying his motion to suppress his confession. He alleges that the confession was improperly induced by promises by Gonzalez and Detective Cadavid. See Leon v. Wainwright, 734 F.2d 770 (11th Cir.1984) (confession is not voluntary if extracted by threat or violence or obtained by direct or implied promises); Brewer v. State, 386 So.2d 232, 235 (Fla. 1980). Maqueira testified at the suppression hearing that Gonzalez promised him that he could obtain benefits if he gave the police the names of the others involved in the murder. Gonzalez denied making any promises. Maqueira also testified that Detective Cadavid told him that if he testified against his accomplices he would obtain immunity from prosecution, a reduction of his current sentence, and a resolution of immigration problems. According to Detective Cadavid, *223 Maqueira told him that he wanted those three things in exchange for his cooperation, but Cadavid told him that he was not authorized to make promises. However, he agreed to tell the judge and the state attorney of Maqueira's cooperation.
The trial court resolved this factual dispute in favor of the state. The record supports the court's finding. Routly v. State, 440 So.2d 1257 (Fla. 1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984). Maqueira's testimony was refuted by every other witness at the suppression hearing. Gonzalez testified that Cadavid only agreed to do whatever possible to help Maqueira and to present his case to the state attorney, who would decide. Fellow inmate Pedro Torres testified that Maqueira confessed to the murders to him. Torres served on occasion as an interpreter between Maqueira and police officers. Torres testified that when Maqueira asked officers about immunity, sentence reduction, and immigration problems, the officers always responded that they had no authority to make promises but would speak to the state attorney. Further, before making the first confession to Detective Cadavid, Maqueira signed a written waiver of rights form in which he indicated that no promises had been made to him. Detective Cadavid obtained a second taped confession in order to assure that Gonzalez had not made any promises to Maqueira. Maqueira stated in that confession that neither Gonzalez nor the police had made any promises to him. The fact that a police officer agrees to make one's cooperation known to prosecuting authorities and to the court does not render a confession involuntary. Puccio v. State, 440 So.2d 419 (Fla. 1st DCA 1983); Bova v. State, 392 So.2d 950, 953 (Fla. 4th DCA 1980), modified on other grounds, 410 So.2d 1343 (Fla. 1982). We find that there were no promises made to Maqueira that would vitiate his confession.
Further, the trial court's determination that Gonzalez was not acting as an agent of the state is supported by the record. The hearing testimony established that Maqueira was not a suspect in the Rodriguez murders prior to his confession. Detective Cadavid had not met or talked with Gonzalez before Maqueira confessed to Gonzalez. Gonzalez had assisted Metro-Dade police officers in approximately four other cases over the past four years. His style was to become friendly with other inmates and then inform the police after they revealed information to him. As a result of his assistance, police officers had written favorable letters to the parole commission on Gonzalez's behalf. However, Gonzalez was never asked for his cooperation, nor was he planted with the intent to gather evidence. His assistance was of his own volition. Maqueira admits that he knew that Gonzalez had police contacts and had assisted another inmate who cooperated with the police and was ultimately freed. He also knew that Gonzalez benefitted from his cooperation with the police. Maqueira initiated his confession to Gonzalez in the hope that his cooperation would benefit him similarly. Under these facts, Gonzalez was not acting as an agent of the state. Michael v. State, 437 So.2d 138 (Fla. 1983) (inmates not government agents even though they had been used as informants previously where first contact with police officers about the instant investigation occurred after defendant confessed to inmates), cert. denied, 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984); Barfield v. State, 402 So.2d 377 (Fla. 1981) (cellmate not government informant where he was not paid or acting pursuant to government instruction and approached authorities on his own initiative after inculpatory statements were made to him).
We find no merit in Maqueira's claim that Gonzalez circumvented his right to assistance of counsel by exploiting an opportunity to confront him without the presence of counsel. Aside from the fact that Maqueira had no counsel at the time, we have determined that Gonzalez was not acting at the state's behest or with the state's knowledge.
We summarily reject Maqueira's claim that the trial court erred in denying his motion for mistrial based upon an alleged improper prosecutorial comment. A defense *224 objection to the comment was sustained, and the comment was not sufficiently prejudicial as to require a mistrial.
Similarly, we reject Maqueira's claim that the trial court erred in denying his motion for judgment of acquittal. Maqueira argues that absent his confession, the state's circumstantial evidence does not exclude every reasonable hypothesis of innocence. Having determined that the confession was not illegally obtained, we find no merit to this claim. The evidence is sufficient to sustain the convictions.
Finally, Maqueira challenges the aggravating circumstances found by the trial court and the court's rejection of mitigating circumstances. The trial court found four aggravating circumstances: (1) Maqueira was previously convicted of another capital felony or a felony involving the use or threat of violence to the person;[2] (2) the murder occurred while Maqueira was engaged in an armed burglary and attempted armed robbery; (3) the murder was committed for the purpose of avoiding or preventing arrest or effecting an escape; and (4) the murder was especially heinous, atrocious, or cruel.[3]
The state concedes that the evidence does not support a finding that the murder was especially heinous, atrocious, or cruel. We agree. Nevertheless, substantial, competent evidence supports the remaining aggravating factors beyond a reasonable doubt. Maqueira confessed that he and his accomplices planned to rob the Rodriguez home. They passed by the house several times until they found the front door open. Maqueira and Villavicencio entered the house armed with guns and a rope. Their plan was to tie up Mr. and Mrs. Rodriguez and force them to disclose the location of the safe. The plan went awry when Villavicencio shot Mr. Rodriguez. The testimony of Maqueira's fellow inmates, Gonzalez and Torres, established that Maqueira killed Mrs. Rodriguez to eliminate her as a witness. They testified that Maqueira told them that he killed Mrs. Rodriguez because she saw him and could have identified him and that, in order to make himself look less guilty, he lied about Villavicencio putting a gun to his head. Maqueira's claim that he heard the shot and ran to the front of the house, where Villavicencio put the gun to his head and repeatedly told him to shoot Mrs. Rodriguez, is inconsistent with the testimony of the victims' daughter. According to her, the two shots occurred within three seconds of each other. His story is further belied by Mrs. Rodriguez's dying declaration that as the two men ran toward the door, one of them turned and shot her.
Maqueira asserts that the trial court improperly rejected as mitigating circumstances that he acted under extreme duress or the substantial domination of another, suffered from an abused childhood, and suffered from alcohol and drug abuse since childhood. Upon our review of the record, we find competent substantial evidence to support the trial court's rejection of the establishment of these mitigating circumstances. Nibert v. State, 574 So.2d 1059 (Fla. 1990).
Although we have invalidated one aggravating circumstance, three valid ones remain. The trial court found no mitigation. In the sentencing order the trial court stated that "it is the Court's conclusion that the magnitude of the crime and the circumstances surrounding the crime vastly overshadow[] any mitigating circumstances set forth herein or propounded by defense... ." After reviewing the record, we find that the trial court's decision to impose the death penalty would not have been affected by elimination of this one aggravating factor. Jackson v. State, 530 So.2d 269 (Fla. 1988).
Accordingly, we affirm Maqueira's convictions and death sentence.
It is so ordered.
*225 SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The facts related by Maqueira matched the facts of the murders, including the location and description of Mr. Rodriguez's gas station and the house, the type of weapons used, and the location and position of Mr. Rodriguez's body. The victims' daughter identified Villavicencio as one of the men she had seen running away from the house. She could not identify the second man. She identified Lazaro Diaz's car as the getaway vehicle and positively identified Diaz as having been standing on the street in front of the house on the morning of the murder.
[2] Maqueira does not challenge this aggravating circumstance, which was based upon prior convictions of attempted first-degree murder and attempted robbery with a firearm.
[3] See § 921.141(5), Fla. Stat. (1983).