GARWOOD, Circuit Judge:
 

 The Mutual Life Insurance Company of New York (“Mutual”) appeals the dismissal of its interpleader action, brought under Fed.R.Civ.P. 22(1) and Bankruptcy Rule 722, and the money judgment against it and in favor of Universal Metals & Machinery, Inc. (“Universal”), a defendant in the interpleader, on the latter’s counterclaim in
 
 *316
 
 those proceedings. Appellees are Universal, James T. Bohart (“Bohart”), and Bo-hart’s trustee in bankruptcy (the “Trustee”). The bankruptcy court based its dismissal of the interpleader on laches, finding that the filing of the interpleader was untimely and that such delay caused prejudice to appellees. The judgment for Universal against Mutual was based on Universal’s prior garnishment of sums due by Mutual to Bohart as beneficiary of a Mutual life insurance policy. We reverse and remand.
 

 FACTS
 

 The facts leading up to this lawsuit are undisputed. On May 10, 1974, Mutual issued a term life insurance policy in the amount of $350,000 on the life of Jean Bohart. The policy named as beneficiary Mrs. Bohart’s husband, James T. Bohart. About five weeks later, Mrs. Bohart died, and Bohart became entitled to the proceeds of the policy. The policy apparently provided several possible alternate “Modes of Settlement” which could be elected by the beneficiary, including installment payments of the policy proceeds. In June 1974, Bo-hart elected the option providing for him to receive the policy proceeds in monthly payments of 15,00o.
 
 [1]
 

 On May 8, 1974, two days before Mutual issued the policy on Mrs. Bohart’s life, Universal obtained a judgment against Bohart in the Texas district court in Dallas in the amount of $219,000, plus interest at 6.75 percent per annum from September 12, 1972, and costs. Bohart timely appealed this judgment, but never superseded it. None of this judgment has been paid. To recover its judgment, Universal applied for post-judgment writs of garnishment against Mutual in the United States District Court for the Northern District of Texas, Dallas Division, and in the state district court in Dallas, on November 1 and November 4, 1974, respectively. The writs were issued and served on Mutual on these same dates. As authorized by Rule 658a, Texas Rules of Civil Procedure, Universal posted no bond in these garnishments as they were pursuant to subdivision 3 of article 4076, Texas Revised Civil Statutes, providing for garnishment “[wjhere the plaintiff has a valid, subsisting judgment.”
 

 On November 5, 1974, however, after it had been served with the writs of garnishment, Mutual paid Bohart the policy sums due him for the months of June through October 1974, a total of $25,000. On November 13, Mutual filed garnishee affidavits in the state and federal garnishment suits brought by Universal. In the affidavits, Mutual admitted liability to Bohart for the remaining proceeds of the insurance policy ($325,000) and committed to hold this amount “subject to the further order of the court.” Mutual apparently filed no additional pleadings in these garnishment actions. Bohart never intervened in the garnishments. So far as the record reflects, no judgment has been entered in either of the garnishment actions.
 

 A few months after the initiation of the garnishments, however, a complication arose. On March 27,1975, the Texas Court of Civil Appeals reversed the judgment won by Universal against Bohart and rendered judgment instead that Universal take nothing in that action.
 
 Bohart v. Universal Metals & Machinery, Inc.,
 
 523 S.W.2d 279 (Tex.Civ.App. — Dallas 1975). Following this decision, on September 30, 1975, Mutual paid Bohart an additional $50,000 representing the monthly insurance payments for the period extending from November 1974 through August 1975.
 

 Shortly thereafter, in October 1975, another creditor of Bohart, Citibank of New York (“Citibank”), filed suit against him in New York state court. In connection with this suit, Citibank applied for an order of attachment against Bohart’s property.
 
 *317
 
 Mutual was served with this order on October 8 at its New York office and on October 10 filed in that proceeding its “affidavit of garnishee pursuant to order of attachment,” admitting that it held $275,000 of policy proceeds payable at $5,000 a month to Bohart. Mutual filed no additional pleadings in that suit. On January 30, 1976, Citibank obtained a judgment against Bohart in the amount of $368,275.46 and in early February 1976 a judgment was entered against Mutual in Citibank's attachment suit. This latter judgment required Mutual to pay all sums presently owing to Bohart and “all future sums to become payable to James T. Bohart, in the sums of $5,000.00 per month, at such times and in such a manner as they will have become payable to James T. Bohart until such sums will, if possible, satisfy the ... demand against James T. Bohart_” Mutual complied with the judgment and on March 1,1976 paid the sheriff of New York County, New York the payments due September 17, 1975 through February 17, 1976, a total of $30,000. In accordance with the attachment judgment, Mutual made $5,000 payments, totaling $25,000, on the seventeenth day of each of the months of March, April, May, June, and July 1976. Bohart did not intervene in these attachment proceedings. Nor did Universal, which apparently first found out about' them a few days prior to May 18, 1976. Citibank never intervened in the Texas garnishment proceedings (it is not shown when it learned of them).
 

 Universal’s suit against Bohart remained pending, having been appealed to the Texas Supreme Court. In an opinion dated March 10, 1976, apparently before Mutual’s second payment on Citibank’s attachment suit, the Texas Supreme Court reversed the judgments of
 
 both
 
 lower courts, remanding Universal’s action against Bohart to the district court for a new trial.
 
 Universal Metals & Machinery, Inc. v. Bohart,
 
 19 Tex.Sup.Ct.J. 212 ( — . —, 1976). On June 23,1976, however, the Texas Supreme Court, on motion for rehearing, withdrew its prior action, reversed the decision of the Court of Civil Appeals, and in all things affirmed the district court’s judgment for Universal against Bohart.
 
 Universal Metals & Machinery, Inc. v. Bohart,
 
 539 S.W.2d 874 (Tex.1976). Shortly before this June 23 decision by the Texas Supreme Court, however, yet another complication occurred. On May 14, 1976, Bohart’s creditors instituted an involuntary bankruptcy proceeding against him in the United States District Court for the Northern District of Texas. He was adjudicated a bankrupt on June 9, 1976. In connection with the bankruptcy action, Bohart and the Trustee also made claims to the insurance proceeds. Bohart apparently claimed the proceeds were exempt under article 21.22 of the Texas Insurance Code. There is no evidence that Bohart had ever previously claimed the proceeds were exempt or that Mutual was aware of his claim in this regard prior to filing its interpleader in January 1977.
 

 By July 1976, Mutual had paid $75,000 of the policy benefits to Bohart and $55,000 to Citibank. Mutual made no further payments. Of the $75,000 received by Bohart, $25,000 was paid after service of the garnishment writs and before Mutual’s answer in those proceedings, and $50,000 was paid after the judgment of the Court of Civil Appeals and before either the Citibank attachment proceedings or the March 1976 initial opinion of the Texas Supreme Court. Of the $55,000 paid Citibank, $10,000 or $15,000 was paid after initiation of the bankruptcy proceedings against Bohart, including $5,000 which was paid after the June 23, 1976 final decision by the Texas Supreme Court. The remainder of the payments to Citibank were made after both its attachment and the judgment of the Court of Civil Appeals and before the bankruptcy and the June 23, 1976 Texas Supreme Court decision.
 

 On January 14, 1977, Mutual filed a bill of interpleader under Bankruptcy Rule 722 and Fed.R.Civ.P. 22(1) in Bohart’s involuntary bankruptcy proceeding. In connection with its interpleader, Mutual deposited with the bankruptcy court and the Trustee all then accrued payments due on or after
 
 *318
 
 August 17, 1976 on the insurance benefit payable to Bohart. On the filing of the interpleader, the bankruptcy court entered an order restraining Citibank and Universal from further prosecuting their respective attachment and garnishment suits against Mutual. The defendants answered Mutual’s complaint and counterclaimed for recovery of the insurance proceeds: the Trustee claimed the proceeds as Bohart’s trustee in bankruptcy; Universal claimed the proceeds, without any deduction for Mutual’s payments to Bohart and Citibank, based upon Universal’s post-judgment writs of garnishment; and Bohart claimed the proceeds as his exempt property. Citibank moved to dismiss the interpleader on jurisdictional grounds. After their answers, however, the defendants entered into a settlement agreement among themselves which was approved by the bankruptcy court. As part of the settlement, the Trustee purchased for $64,729.44 the judgment against Mutual entered in Citibank’s attachment suit.
 
 [2]
 
 In- addition, the Trustee, Bohart, and Universal agreed that each would receive one third of any recovery from Mutual. They then filed an amended answer and counterclaim, requesting dismissal of Mutual’s interpleader, dissolution of the restraining order against Citibank, and rendition of judgment against Mutual on Universal’s counterclaim; Bohart and the Trustee disavowed any claims in their own individual rights to the policy proceeds. The case was submitted to the bankruptcy court on a pretrial order that stipulated the facts and set forth the contested issues of law. On February 8, 1983, the bankruptcy court entered final judgment dismissing Mutual’s interpleader on the basis of laches. The court also entered judgment in favor of Universal on its counterclaim against Mutual for the full amount of Universal’s judgment against Bohart, $219,000 plus interest since September 12, 1972.
 
 [3]
 
 Mutual appealed to the district court and that court affirmed the bankruptcy court’s judgment. This appeal followed.
 

 DISCUSSION
 

 Issues
 

 In holding that the interpleader should be dismissed for laches, both the bankruptcy court and the district court purported to pretermit the question of whether the decision of the Court of Civil Appeals in Universal’s suit against Bohart “suspended” Universal’s garnishment of Mutual. Nevertheless, it appears that the judgment below in favor of Universal on its counterclaim against Mutual necessarily rests on the determination that Universal’s garnishment, at least as a consequence of the Texas Supreme Court’s June 23, 1976 final decision, “trapped” the entire face amount of the Mutual policy, including the $50,000 thereof which Mutual paid to Bohart after the Texas Court of Civil Appeals’ decision and before either the Texas Supreme Court’s decision or the Citibank attachment, and also the some $50,000 thereof which Mutual paid to Citibank on its attachment after the Court of Civil Appeals’ decision and before the June 23, 1976 final decision of the Texas Supreme Court.
 
 [4]
 
 
 *319
 
 Moreover, Universal’s claim that it was prejudiced by Mutual’s delay in bringing the interpleader rests in large part on the assertion that allowance of the interpleader would cause it to “lose” its right to these funds which Mutual had paid out on the policy, and this factor also seems to have influenced the courts below in dismissing the interpleader. Consequently, we first consider the question of the effect of the Court of Civil Appeals’ decision on the garnishment proceedings, and then turn to the question of laches in bringing the inter-pleader.
 

 Texas Law/Effect of Reversal
 

 As Mutual asserts, Texas courts have held that “[generally, reversal of a judgment or order completely nullifies it, leaving it as if it had never been rendered other than as to further rights of appeal.”
 
 Flowers v. Flowers,
 
 589 S.W.2d
 
 746, 748
 
 (Tex.Civ.App. — Dallas 1979, no writ).
 
 See also Ex parte Rutherford,
 
 556 S.W.2d 853 (Tex.Civ.App. — San Antonio 1977, no writ);
 
 Bichsel v. Heard,
 
 828 S.W.2d 462 (Tex.Civ.App. — San Antonio 1959, no writ). Further, it is well-established that under Texas law a post-judgment garnishment is “ancillary to the original proceedings and is the extension and enforcement of the trial court’s judgment.”
 
 Pitts v. Dallas Nurseries Garden Center, Inc.,
 
 545 S.W.2d 34, 37 (Tex.Civ.App. — Texarkana 1976, no writ). A reversal of the lower court’s judgment sets aside not only that judgment, but also any ancillary proceedings dependent upon it.
 
 Flowers,
 
 589 S.W.2d at 748;
 
 Thurmond v. Kleberg First National Bank,
 
 481 S.W.2d 164, 165 (Tex.Civ.App.— Corpus Christi 1972, writ ref’d n.r.e.).
 

 Thurmond
 
 involved an action for garnishment which was brought against the Kleberg First National Bank based upon a final judgment in another case against a depositor of the bank. Because it had reversed the judgment in the main case, the Court of Civil Appeals found it unnecessary to resolve the issues presented in the appeal of the garnishment action and simply reversed and remanded this action to the trial court for further proceedings. In so doing, the court stated that “[t]he garnishment proceeding brought ... after judgment in the main case fails because of the reversal of that judgment, and in the present posture of the case it appears that there is no final judgment on which to base the instant garnishment proceeding.” 481 S.W.2d at 165. Unlike the present case, as appellees point out, the trial court in
 
 Thurmond
 
 had ordered the dismissal of the garnishment suit upon the filing of a super-sedeas bond by the defendant in the main suit. The appeal in that case was thus by the garnishor who apparently wished to proceed with garnishment of the debtor’s checking accounts. For this reason,
 
 Thurmond
 
 is not precisely on point. Nevertheless, we find that the language of this opinion supports the appellant’s position.
 
 [5]
 

 Bichsel, Ex parte Rutherford,
 
 and
 
 Flowers
 
 all involved contempt proceedings brought to enforce an order of the district court that had been reversed by a judgment of the Court of Civil Appeals.
 
 Flowers
 
 and
 
 Ex parte Rutherford
 
 involved contempt proceedings as a result of a custody order. In
 
 Bichsel,
 
 the Court of Civil Appeals reversed an order by the district court enjoining a police chief from ordering a police officer to take a polygraph examination. Almost immediately after this reversal the police chief ordered the officer to take the test, and a contempt proceeding was initiated against the chief. The court refused to enforce the contempt order, de
 
 *320
 
 termining that its judgment had the “effect of instantly dissolving the injunction, although the appellee had a right to file a motion for rehearing and, if this were overruled, then to apply for a writ of error to the Supreme Court of Texas.” 328 S.W.2d at 466.
 

 Appellees attempt to distinguish these three cases on the basis that they involve contempt proceedings and do not apply in the garnishment context. This argument has some appeal. Because an order of contempt is a harsh and punitive measure, it is reasonable that a court would be reluctant to enforce such an order where the basis for it was in doubt. However, we do not consider the reasoning of these cases to be limited to contempt proceedings.
 

 Appellees also attempt to distinguish the cases relied on by Mutual by pointing out that these are all eases in which the decision by the Court of Civil Appeals was in fact the final decision because no writ of error was subsequently granted by the Texas Supreme Court. This distinction is not persuasive and is not supported by the reasoning in these decisions. In
 
 Bichsel,
 
 for example, the court decided that its reversal dissolved the injunction granted by the district court even before the date for motion for rehearing in that court.
 
 [6]
 

 We find most persuasive a decision By the Texas Supreme Court,
 
 Flanary v. Wade,
 
 102 Tex. 63, 113 S.W. 8 (Tex.1908). In that land title suit, the Texas Supreme Court was required to determine who was entitled to a particular tract of land that had been sold under execution as a result of a previous suit. In the earlier suit, the district court had held in favor of the plaintiff, but the Court of Civil Appeals, in a decision rendered April 18, 1903, had ordered that the judgment of the district court be reversed and the cause remanded unless the appellee filed a remittitur within twenty days. A remittitur was timely filed, and on May 9, 1903 the appellate court ordered that the judgment be affirmed in the original amount, less the re-mittitur. The plaintiff in the district court caused a writ of execution to be issued on April 28, 1903, and on May 8, 1903 the writ was levied on the land of the defendant. The land was sold under this execution on July 7, 1903. The Texas Supreme Court held that the execution and levy were
 
 void
 
 because the execution had been issued on a judgment that was then annulled by the Court of Civil Appeals. For this reason, the court held that the sale of the land was
 
 void
 
 and conferred no title upon the buyer, or his assignee, a party to the land title suit, notwithstanding that when the sale took place the judgment had been affirmed. The court reasoned as follows:
 

 “On the 28th day of April, 1903, there was no judgment in the district court of Bosque county between the parties hereto which would authorize the issuance of the execution that the clerk of that court issued directed to the sheriff of Erath county. Therefore the execution issued upon the judgment which had been annulled by the Court of Civil Appeals being without aüthority was void, and the levy made by virtue of that execution upon the land in controversy on the 8th day of May was likewise invalid. It follows that, the execution and the levy
 
 *321
 
 upon which the subsequent proceeding and sale depended being invalid, the sale itself was void, and conferred no title upon Wood who purchased at the sale made on July 17, 1903. The title of Wade being derived from Wood, necessarily falls with it, and the conclusion must be reached that Wade had no cause of action in this case for the recovery of this land.
 

 “The subsequent affirmance of the judgment of the district court of Bosque county by the Court of Civil Appeals was in fact the entering of a new and different judgment, but in no phase of the case could the subsequent entry of the judgment have the effect to make valid that which was void before.” 113 S.W. at 10.
 

 Appellees argue that
 
 Flanary
 
 is distinguishable as involving an execution rather than a garnishment. We are not persuaded that this is a sufficient basis on which to distinguish
 
 Flanary,
 
 particularly as the Texas courts have characterized garnishment as “being but a mode of enforcing execution.”
 
 Kelly v. Gibbs,
 
 84 Tex. 143, 19 S.W. 563, 564 (1892).
 
 See also Tom Benson Chevrolet Company, Inc. v. Beall,
 
 567 S.W.2d 857, 859 (Tex.Civ.App. — San Antonio 1978, writ ref’d n.r.e.) (“Garnishment is but a mode of enforcing execution of a court’s judgment.”). Moreover, the important point is that
 
 Flanary
 
 held the judgment of the Court of Civil Appeals was immediately effective to set aside the trial court’s judgment and render it inoperative, notwithstanding that no mandate had issued and the judgment of the Court of Civil Appeals was not final in the sense that it was still subject to being set aside by the Court of Civil Appeals itself or by the Texas Supreme Court.
 
 [7]
 

 We agree with appellees that none of the cases cited by Mutual fit the precise facts of the present case. Based on our review of this authority, however, certain principles emerge that must govern our decision here. First, it appears that a reversal by the Court of Civil Appeals results in the immediate suspension of the judgment of the district court. This is so even though the mandate has not issued in the case and there is a petition for writ of error pending. Moreover, the reversal has a like effect on any ancillary action, such as post-judgment garnishment under subdivision 3 of article 4076, that depends on the judgment which is reversed by the appellate court. For these reasons, we hold that the writs of garnishment in the present case ceased to be in effect during the period after the decision by the intermediate Texas appellate court and prior to the June 23, 1976 judgment of the Texas Supreme Court.
 

 Appellees argue, however, that under Texas law the duties of a garnishee, such
 
 *322
 
 as Mutual, are those described in
 
 Cohen v. Advance Imports, Inc.,
 
 597 S.W.2d 449 (Tex.Civ.App. — Dallas 1980, writ ref d n.r. e.).
 
 Cohen
 
 was a conversion suit brought by Advance Imports, Inc., which had arranged with the defendants Cohen and Alpha Enterprises to act as its agent in selling its goods in Texas to several customers, including the Gibson retail stores. Goods had been shipped by Advance Imports to Houston and had been stored in a warehouse owned by Alpha when a dispute arose between Advance Imports and Gibson. As a result of this dispute, Gibson filed suits in two justice of the peace courts, and caused prejudgment writs of garnishment to be served on Alpha. In each of those proceedings Advance Imports allowed a default judgment to be rendered against it, but then timely filed bonds for appeal and trial
 
 de novo
 
 in the county court at law. Because of these two prejudgment writs, Cohen and Alpha refused to return the goods to Advance Imports, and Advance Imports then filed its conversion action against them. The district court found in favor of Advance Imports on its conversion suit and awarded damages against defendants Cohen and Alpha. On appeal of that judgment, the issue for the Court of Civil Appeals was whether Cohen and Alpha were justified in detaining the goods pending Advance Imports’ appeal of the two justice court suits in which prejudgment garnishment writs had been issued. Advance Imports’ argument was that the justice court prejudgment writs no longer had any effect because of the appeals in the principal suits. Expressly noting that the writs of garnishment were based on the garnishor’s bond and were
 
 not
 
 based on judgments, the court determined that it need not decide whether the writs remained in effect pending the appeals to the county courts at law in the main suits, which appeals, though without supersedeas bonds, had the effect of vacating the judgments against Advance Imports. The court concluded that a garnishee is simply not required to resolve such questions, and stated:
 

 “If we accept the argument of Advance Imports, the garnishee would also act at his peril if he obeys the writ and retains the goods or money that he is otherwise bound to deliver or pay over to the defendant in the main suit. He would have to make repeated investigations of the proceedings in the main suit, to which he is not a party, and seek legal advice in order to determine whether he should still hold the goods or the money .... In our view, a disinterested third party should not be subjected to such a double peril. Therefore, we hold that when, as in this case, a valid writ of garnishment has been served, the garnishee’s duty is to hold the goods of the defendant until the writ is quashed or dissolved by an explicit order of the court that issued it or some higher court acting in its stead. Until the garnishee has notice of such an order, his detention of the goods cannot render him liable for conversion.” 597 S.W.2d at 452.
 

 Appellees argue that
 
 Cohen
 
 expresses the duty owed by a garnishee and that Mutual’s reliance on the reversal by the Court of Civil Appeals is therefore not justified. We disagree, finding
 
 Cohen
 
 properly distinguished on several grounds. First, the writs in that case were prejudgment writs under subdivision 2 of article 4076, as the
 
 Cohen
 
 court noted, which are protected by a bond given by the garnishor and which are not dependent upon the judgment in the main suit. Tex.R.Civ.P. 658a. Second, the court in
 
 Cohen
 
 was concerned with a conversion action against a garnishee who was holding goods based on outstanding writs of garnishment. The court was unwilling to hold the garnishee liable in conversion because it obeyed the writs. Third,
 
 Cohen
 
 does not involve the effects of a determination that the plaintiff in the main suit is not entitled to recover. The argument in
 
 Cohen,
 
 rather, was that the writs should have no effect merely because of the appeals. This argument was at best a tenuous one. While the appeals vacated the justice court judgments in the main suits, this certainly put the garnishor, plaintiff in those suits, in no
 
 *323
 

 worse
 
 position than when the writs were originally obtained after the main suits were filed but prior to judgment therein. It would be illogical to hold that because there was no judgment in the main suit, which was still pending and unresolved, that therefore the writ of garnishment, which did not depend on a judgment in the first place, was suspended.
 
 Cohen
 
 is not contrary to the conclusion we have reached.
 

 Appellees next argue that allowing a writ of garnishment to be extinguished or suspended under the circumstances presented in this case is contrary to the “funds trapping” intent of the Texas garnishment statutes and rules. In this regard, they assert that Texas law provides a blueprint for a garnishment proceeding that is designed to protect victorious and diligent plaintiffs. In support of their argument, appellees cite Rule 657 of the Texas Rules of Civil Procedure which provided in 1974 that:
 

 “In the case mentioned in subdivision 3 of Article 4076 of the Revised Civil Statutes of Texas, 1925, judgment whether based upon a liquidated demand or an unliquidated demand, shall be deemed final and subsisting for the purpose of garnishment from and after the date of its rendition, unless a supersedeas bond shall have been approved and filed in accordance with Rule 364.”
 
 [8]
 

 We concur that Rule 657 indicates that a garnishment may be taken once a judgment has been rendered, providéd it is not superseded; however, it does not address the effects of a reversal of that judgment, nor does it state that a reversal by the Court of Civil Appeals has no effect on an ancillary proceeding dependent upon that judgment.
 

 Nor does article 4084 of the Texas Revised Civil Statutes, also relied on by appellees, address this issue. This article provides that:
 

 “From and after the service of such writ of garnishment, it shall not be lawful for the garnishee to pay the defendant any debt or to deliver to him any effects ....”
 

 Again, we agree that article 4084, in plain language, imposes a duty on a garnishee. The statute, however, does not define the limits of this duty nor does it address what occurs after a reversal by an intermediate appellate court. Texas case law would indicate that, with respect to garnishment on judgment under subdivision 3 of article 4076, article 4084 remains in effect only while the underlying judgment, and thus the writ of garnishment based on that judgment, remains valid.
 
 See Tom Benson Chevrolet Company, Inc. v. Beall,
 
 567 S.W.2d at 859;
 
 Thurmond v. Kleberg First National Bank, supra.
 

 Finally, appellees argue that two decisions by the Court of Civil Appeals establish that garnishment suits are not to be dismissed nor writs quashed or dissolved until the appeal process has run its full course, citing
 
 Bergman Produce Company v. First State Bank of Paducah,
 
 141 S.W. 154 (Tex.Civ.App. — Amarillo 1911, no writ), and
 
 Farmers State Bank of Merkel
 
 
 *324
 

 v. First National Bank of Anson,
 
 228 S.W. 268 (Tex.Civ.App. — El Paso 1921, no writ). In each of these cases, judgment in the main suit was in favor of the defendant and, as a result,' the trial court dismissed a garnishment action brought in connection with that suit. The appellate courts reversed and remanded the judgments in the main suits. In also reversing and remanding the garnishment proceedings, the courts stated that these proceedings should have been continued by the trial courts following the dismissals of the main actions to await the result of an appeal. These cases, however, did not involve post-judgment writs under the predecessor to subdivision 3 of article 4076 and are hence not controlling in the present case.
 

 We do not doubt that the garnishment process described by appellees is a sensible one and perhaps the most appropriate way to deal with problems such as those posed in this case. However, we do not believe that the present state of Texas law yields this result.
 

 Accordingly, we hold that Universal’s writs of garnishment did not “trap” any of the payments made by Mutual after the March 27, 1975 decision of the Court of Civil Appeals in Universal’s suit against Bohart and before the June 23, 1976 decision of the Texas Supreme Court in that case; that such payments by Mutual did not violate the writs of garnishment or applicable statutes and Rules pertaining thereto; and that, for purposes of calculating the obligations and liabilities of Mutual, as garnishee, to Universal, as garnishor, by virtue of the garnishments, the amount of such payments must be deducted from the amount in which Mutual would be considered as being or having been indebted to Bohart had such payments never been made in respect to the insurance policy. However, this holding does not affect the $25,000 payment made by Mutual to Bo-hart on November 5, 1974, after service of writs of garnishment and before the decision of the Court of Civil Appeals, or the $5,000 paid by Mutual to Citibank after the June 23, 1976 Texas Supreme Court decision. We hold that those payments were in violation of article 4084, and that, for purposes of calculating Mutual’s obligations to Universal under the garnishment, Universal shall be considered as entitled to recover, as garnishor in the garnishment from Mutual as garnishee, the same amount as Universal would be entitled to so recover if such payments had never been made in respect to the insurance policy.
 
 [9]
 
 We decline to extend the Rule of
 
 Flanary
 
 so as to hold that the garnishment was ineffective at any time that the ultimately wholly affirmed judgment on which it was based was entirely subsisting and in force. We also accordingly hold that the garnishment was effective after its service and until the decision of the Court of Civil Appeals in Universal’s suit against Bohart, and again from and after the June 23, 1976 decision of the Texas Supreme Court which reinstated the trial court’s judgment in that case.
 

 We reverse the judgment against Mutual and in favor of Universal on the latter’s counterclaim, and remand that action to the court below for further proceedings consistent herewith.
 

 We now turn to the propriety of the interpleader and the question of laches.
 

 Interpleader/Laches
 

 An interpleader action is designed to protect a stakeholder,
 
 as such,
 
 from the possibility of multiple claims upon a single fund.
 
 See generally,
 
 Wright & Miller,
 
 Federal Practice & Procedure:
 
 
 *325
 

 Civil
 
 § 1704 (1972);
 
 Maryland Casualty Company v. Glassell-Taylor & Robinson,
 
 156 F.2d 519 (5th Cir.1946). To this end the interpleader statutes and rules are “liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability.”
 
 New York Life Insurance Company v. Welch,
 
 297 F.2d 787, 790 (D.C.Cir.1961). A stakeholder’s right to interplead is not necessarily defeated by the fact that an interpleaded claimant has an outstanding judgment against the stakeholder. 3A
 
 Moore’s Federal Practice
 
 ¶ 22.08[1] n. 4 (1984).
 
 See Treinies v. Sunshine Mining Company,
 
 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939) (interpleader proceeding in which both claimants had previously secured judgments against the stakeholder).
 
 [10]
 
 Because interpleader has its roots in equity, it is subject to certain equitable doctrines such as laches.
 
 [11]
 
 This Circuit has identified three elements that must be present to support a finding of laches: (1) delay in asserting a right of claim; (2) that the delay was inexcusable; and (3) that undue prejudice resulted from the delay.
 
 Armco, Incorporated v. Armco Burglar Alarm Co., Inc.,
 
 693 F.2d 1155, 1161 (5th Cir.1982). In finding that Mutual’s inter-pleader action was barred by laches, the bankruptcy court determined that these criteria were met. The court found that Mutual did not elect to pursue “the safe and easy course of interpleader until January 14, 1977,
 
 twenty-six months
 
 after it knew both Bohart and Universal were claiming the same fund, and incredibly, almost
 
 sixteen months
 
 after it learned of Citibank’s third claim to the same fund, and after it had paid out $130,000 from the fund to Bohart and Citibank in defiance of Universal's garnishment and the statement in its own answer to the garnishment that it would hold the fund subject to the further order of the Texas court.” The court also found that both Universal and Citibank had been injured by this delay because Universal had “lost its claim to all or part of the $130,000 already paid out, and Citibank’s claim to a share of the fund has been clouded by the earlier payments to Bohart at a time when Universal had its judgment,” and because “the dilatory actions of Mutual prevented the collection of all or a portion of the Universal judgment from the fund in question.” The district court, applying the clearly erroneous standard,
 
 [12]
 
 up
 
 *326
 
 held the bankruptcy court’s determination that there was unreasonable and inexcusable delay and that Universal and Citibank were unduly prejudiced by Mutual’s failure to file a timely interpleader action.
 

 On appeal, Mutual contends that the finding of laches was not justified. It argues that because Citibank’s attachment was filed after the decision of the Court of Civil Appeals and before the June 23, 1976 Texas Supreme Court decision reinstating Universal’s judgment against Bo-hart, it was not until the latter date that there were two or more valid claimants to the insurance policy proceeds, and accordingly the January 1977 interpleader was timely filed. Our holding that the garnishment was ineffective during the period between the decision of the Court of Civil Appeals and that of the Texas Supreme Court on June 23, 1976 establishes a portion of the premise of Mutual’s argument, but not necessarily the conclusion or even the entire premise. Nearly seven months elapsed from the Texas Supreme Court’s final decision in June 1976 until Mutual filed its interpleader in January 1977. Moreover, it is not entirely clear that Mutual should not have known all along that Universal’s position would likely be that it was entitled to all policy proceeds becoming due after the decision of the Court of Civil Appeals in the event the trial court’s judgment should ultimately be reinstated by the Texas Supreme Court. However, because we reverse and remand on the issue of prejudice, we pretermit any decision respecting whether Mutual unreasonably delayed bringing the interpleader.
 
 [13]
 
 Should it become necessary to do so, the trial court can again address that issue in the light of the other holdings made in this opinion.
 

 Prejudice
 

 The primary focus of the laches question in this case, however, is on the issue of whether or not there was prejudice because of Mutual’s delay. In this regard, we note that a finding of prejudice requires more than simply negligence or delay in bringing an action.
 
 Environmental De
 
 
 *327
 

 fense Fund, Inc. v. Alexander,
 
 614 F.2d 474, 479 (5th Cir.),
 
 cert. denied,
 
 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980) (“Measuring prejudice entails balancing equities.”). Nor is there prejudicial harm merely because one loses what otherwise he would have kept; there must be a delay which causes a disadvantage in asserting and establishing a claimed right or defense.
 
 Esso International, Inc. v. The SS Captain John,
 
 443 F.2d 1144, 1150 (5th Cir.1971). One may also show prejudice by proving other damage caused by a detrimental reliance on his adversary’s conduct.
 
 Law v. Royal Palm Beach Colony, Inc.,
 
 578 F.2d 98, 101 (5th Cir.1978). Appellees had the burden of proof on this issue.
 
 See
 
 note 13,
 
 supra.
 

 The bankruptcy court apparently based its finding of prejudice on the fact that appellees would lose their claims to the policy proceeds paid out by Mutual. This certainly does not apply to Citibank, as it had no claim prior to its attachment, and thereafter all policy proceeds paid out were paid to it. There is no suggestion of anything Citibank could have done after its attachment to improve its position with respect to the policy proceeds. Nor does the record show that either Bohart or the Trustee was unfairly prejudiced as to the policy proceeds. To begin with, there is no showing of unreasonable delay as to them.
 
 See
 
 note 13,
 
 supra.
 
 Further, their amended answer asserted no claims in their individual rights. And, of course, for them to be prejudiced they would have to have had some character of a potentially valid claim. There is no evidence or finding that Bohart or the Trustee ever had a potentially valid claim based on either an exemption or a preference theory. Even if they had, there is no evidence or finding that Mutual’s delay prejudiced them in their ability to either prove or enforce such a claim in the interpleader or by intervention in the garnishment or attachment.
 
 See
 
 note 13,
 
 supra.
 

 [14]
 

 As to Universal, we have held that it had no claim by virtue
 
 of
 
 its garnishment on the $50,000 paid to Bohart and the $50,-000 paid to Citibank after the decision of the Court of Civil Appeals and prior to the June 23, 1976 decision of the Texas Supreme Court.
 
 [15]
 
 With respect to the $25,000 paid Bohart before the Court of Civil Appeals’ decision, and the $5,000 paid Citibank after the June 23, 1976 Texas Supreme Court decision, we have held that Universal has a valid garnishment claim against Mutual. It is hence not prejudiced with respect to these amounts.
 

 Another possible aspect of prejudice to Universal regarding the policy funds remains to be considered. Had Mutual promptly made Universal aware of Citibank’s attachment, Universal could have filed another garnishment against Mutual, utilizing subdivision 2 of article 4076 (with bond pursuant to Rule 658a) and hence avoiding the suspensive effect of the Court of Civil Appeals’ decision. It seems likely, however, that this would not have given Universal any priority over Citibank respecting the policy proceeds paid after the decision of the Court of Civil Appeals and before the June 23, 1976 Texas Supreme Court decision.
 
 See Commercial Credit Corporation v. United States Fire Insurance Company,
 
 630 S.W.2d 651, 652 (Tex. App. — Houston [1st Div.] 1982, no writ);
 
 Frankfurt’s Texas Investment Corporation v. Trinity Savings & Loan Associa
 
 
 *328
 

 tion,
 
 414 S.W.2d 190, 192, 196 (Tex.Civ. App. — Dallas 1967, writ ref’d n.r.e.). Nor is there any evidence or finding that Universal likely would have followed this course. Similarly, had Mutual filed an in-terpleader promptly after Citibank’s attachment, it would appear that, consistent with our holding as to the effect of the Court of Civil Appeals’ decision on Universal’s post-judgment garnishment, Citibank would have priority over Universal with respect to policy proceeds paid after its attachment (which followed the Court of Civil Appeals’ decision) and prior to the June 23, 1976 Texas Supreme Court decision.
 

 As to the sums paid Bohart after the Court of Civil Appeals’ decision, of course, a timely garnishment under subdivision 2 of article 4076 (with bond pursuant to Rule 658a) would have trapped these funds, though an interpleader alone would likely not have, as Bohart was entitled to the funds absent an effective garnishment. However, the present record does not support the conclusion that Universal’s failure to file a garnishment under subdivision 2 of article 4076 after the Court of Civil Appeals’ decision, so as to prevent payments to Bohart on the policy, can, in justly “balancing equities,” be blamed on anything Mutual did or failed to do. Universal, of course, knew that Bohart was entitled to current payment of the policy proceeds installments except to the extent those were “trapped” by its writs of garnishment. Universal is certainly as much charged with knowledge of the decision of the Court of Civil Appeals in its suit against Bohart as is Mutual. The same is true as to the legal effect of that decision on the writs of garnishment. The mere form of Mutual’s answer to those writs, stating that it would hold the policy proceeds “subject to the further order of the court,” does not in and of itself support the conclusion that Mutual agreed or represented that it would continue to hold the funds even though the writ should become ineffective upon reversal of the judgment in the main suit, or that Universal in fact so understood Mutual’s answer and relied on that understanding (as opposed to its own conclusions as to the legal effect of the decision of the Court of Civil Appeals), or that such understanding and reliance on Universal’s part would have been reasonable. Nor is there any other evidence of record sufficient for that purpose.
 

 We turn our consideration to a final aspect of possible prejudice to Universal and Citibank. As previously noted, it appears that Universal was unaware of Citibank’s October 1975 attachment until a few days prior to May 18, 1976. There is no evidence of when Citibank first became aware of Universal’s garnishment, but we will assume that this was not until sometime after the June 23, 1976 Texas Supreme Court decision. It is possible that had Mutual, promptly after Citibank’s attachment, made Universal and Citibank each aware of the other’s assertion of a conflicting claim to the policy proceeds, that Universal and Citibank would have at that time successfully sought to protect the collectibility of their respective claims against Bohart by reaching other assets of his which were
 
 then
 
 available but were no longer so thereafter when those parties in fact learned of each other’s claims. The problem with this theory is that it was not addressed by either court below and there is absolutely no evidence in the record either tending to establish, or to negate, any such prejudice. We recognize that proof of such prejudice is often inherently very difficult. But while such inherent difficulty should properly be taken into' account in weighing the sufficiency of the proof of prejudice, it cannot excuse a total absence of any evidence on that score, especially where, as here, there is nothing whatever to indicate how difficult such proof would be in this particular case. We likewise recognize that the delay itself may make the proof more difficult, or even impossible, to come by, and that this also must be taken into account. Again, however, there is simply no showing or finding that the delay here either had, or did not have, any such effect.
 

 We hold that there was insufficient proof of prejudice to support the bankruptcy court’s finding of laches and that the bank-
 
 *329
 
 ruptey court thus erred in dismissing Mutual’s interpleader on that basis. Accordingly, the judgment dismissing Mutual’s inter-pleader is reversed. However, as it appears that the case was not fully developed and was to some extent tried on the wrong theory in respect to laches, we remand, rather than now directing judgment allowing the interpleader, to permit further evidence or another hearing on the entire lach-es issue. To preserve the position of the parties in the interim, we reinstate the bankruptcy court’s restraining order, pending further order by that court following our remand.
 

 CONCLUSION
 

 We reverse the judgment in favor of Universal on its counterclaim against Mutual and remand that cause of action for further proceedings consistent with this opinion.
 

 We reverse the judgment dismissing Mutual’s interpleader and remand that action for further proceedings consistent with this opinion. We likewise reinstate the restraining order entered below, pending further order by the court below following our remand of the interpleader.
 

 REVERSED and REMANDED.
 

 [1]
 

 . The payments were to be made on the seventeenth day of each month, commencing in June 1974.
 

 Bohart's election also provided that if he died before all the proceeds were disbursed, the bal-anee was to be paid in a lump sum to his sister, if then living, and if not, then to his estate, and that "[tjhere shall be no right to surrender, commute, withdraw, anticipate, assign or change this Mode of Settlement.”
 

 [2]
 

 . At the time of the settlement, the amount outstanding on this judgment was 1166,466.97. The record does not reflect how this amount was determined. Apparently, Citibank made some other collections on its judgment against Bohart.
 

 [3]
 

 . The parties have treated the judgment as dissolving the restraining order against Citibank. The judgment also provided that on Mutual’s payment of the court's judgment against it in favor of Universal or of the New York court’s attachment judgment against Mutual in favor of Citibank, then Mutual "will be subrogated to the claims of those creditors in the bankruptcy proceeding.” The judgment further provided for refund to Mutual of the sums it had deposited in the registry of the court on filing the interpleader.
 

 [4]
 

 .Although exact calculations have not been furnished us and it is unclear what interest factor, if any, was involved in the payments to be made on Mutual’s life insurance policy, nevertheless all parties have proceeded before us on the basis that the amount of Universal’s judgment on its counterclaim against Mutual exceeded, when rendered, the amount which would have remained outstanding, at the time of such judgment, on Mutual’s policy if Mutual had been given credit for the referenced payments to Bo-
 
 *319
 
 hart and Citibank. No basis for Universal's recovery on its counterclaim is suggested other than its garnishment, nor does there appear any basis to deny Mutual a credit for the referenced payments other than the conclusion that those funds were "trapped" by the garnishment.
 

 [5]
 

 . See also Tom Benson Chevrolet Company, Inc. v. Beall,
 
 567 S.W.2d 857, 859 (Tex.Civ.App. — San Antonio 1978, writ ref’d n.r.e.) (trial court’s setting aside of judgment and granting new trial in main suit destroyed the existence of the judgment on which the post-judgment garnishment writ was based, so that garnishee’s payment to the debtor after service of writ and before the order granting the new trial was valid notwithstanding that thereafter judgment was again rendered for the garnishor in the main suit).
 

 [6]
 

 . In
 
 Ex parte Rutherford,
 
 556 S.W.2d 853 (Tex. Civ.App. — San Antonio 1977, no writ), the San Antonio Court of Civil Appeals granted habeas corpus to a party found in contempt by the trial court for violating one of its orders which had been set aside by the El Paso Court of Civil Appeals, notwithstanding that when the San Antonio Court of Civil Appeals acted the judgment of the El Paso Court of Civil Appeals was still pending review in the Texas Supreme Court.
 
 Id.
 
 at 855. The San Antonio Court of Civil Appeals recognized that the El Paso Court of Civil Appeals’ judgment did not possess that degree of finality contemplated by the statutes governing the issuance of mandates nor that required to support a finding of
 
 res judicata,
 
 citing
 
 Dignowity v. Fly,
 
 110 Tex. 613, 210 S.W. 505 (Tex.1919), and
 
 Fidelity Union Casualty Company v. Hanson,
 
 53 S.Ct. 12, 77 L.Ed. 522, 44 S.W.2d 985 (Tex.Comm.App.),
 
 cert. denied,
 
 287 U.S. 599 (1932). The court noted, however, that neither of these cases "supports the thesis that an application for writ of error, in some mysterious way, deprives of all vitality a judgment of a Court of Civil Appeals reversing the judgment of a trial court and, at the same time, breathing new life into, and reinstating, the judgment of the trial court.” 556 S.W.2d at 855.
 

 [7]
 

 . We observe that the Texas Rules of Civil Procedure have long contained provisions apparently designed to delay the issuance of the mandate of the Court of Civil Appeals (now Court of Appeals) until its judgment becomes final in the sense of no longer being alterable by rehearing or application for writ of error to the Texas Supreme Court.
 
 See
 
 Tex.R.Civ.P. 442, 507;
 
 Huntress v. State,
 
 95 S.W.2d 974 (Tex.Civ.App.— San Antonio 1936, no writ) (predecessor statutes). While these provisions have not been construed as jurisdictional, it has been indicated that on proper objection a trial court should not further act on an appealed case until receipt of the appellate court's mandate.
 
 See Continental Casualty Company v. Street,
 
 364 S.W.2d 184, 187-88 (Tex.1963).
 
 See abo Montague County v. White,
 
 260 S.W. 907, 908 (Tex.Civ.App. — Fort Worth 1924, no writ). It might be logically argued that, accordingly, the judgment of the appellate court is wholly ineffective until the mandate is issued. That, however, is contrary to the
 
 Ex parte Rutherford
 
 and
 
 Bichsel
 
 decisions cited in the text and, more importantly, is inconsistent with the plain holding of the Texas Supreme Court in
 
 Flanary.
 
 Similar provisions (then statutory) concerning the mandate were in effect when
 
 Flanary
 
 was decided.
 
 See Ex parte Gill,
 
 48 Tex.Cr.R. 517, 89 S.W. 272, 273 (1905). We also note that provision has always been made in the Texas Rules of Civil Procedure for the clerk of the appellate court to formally deliver to the clerk of the trial court, for filing in the papers of the case, a copy of the appellate court’s decision within three days after its rendition.
 
 See
 
 Tex.R.Civ.P. 456 (this provision apparently
 
 derives
 
 from
 
 former article
 
 1836b enacted in 1929). Accordingly, the provisions regarding the issuance of an appellate court’s mandate do not, in our view, justify our departure from
 
 Flanary.
 
 Such action, should it be deemed advisable, is more properly taken by a Texas court or the Texas Legislature.
 

 [8]
 

 . Rule 657, one of the Rules originally adopted in 1940, was apparently intended to reverse the position taken in
 
 Scheuing v. Challis,
 
 104 S.W.2d 581 (Tex.Civ.App. — San Antonio 1937, writ ref'd), that, for purposes of garnishment on judgment under subdivision 3 of article 4076, the judgment in favor of the garnishor, plaintiff in the main suit, against the garnishment debt- or, defendant in the main suit,
 
 if
 
 such judgment were based on an unliquidated demand, had to have become final in the sense of no longer being subject to being set aside on appeal. This holding was apparently based on a misreading of
 
 Waples-Platter Grocer Co. v. Texas & P. Ry. Co.,
 
 95 Tex. 486, 68 S.W. 265 (1902), and
 
 Alexander v. Berkman,
 
 3 S.W.2d 864 (Tex.Civ.App.— Waco 1928, writ ref’d), as those cases merely held that a judgment in favor of the garnishment debtor against the garnishee was not subject to garnishment of
 
 any
 
 kind (whether post-judgment under subdivision 3 of article 4076 or otherwise),
 
 if
 
 it were based on an unliquidated demand and had not (by the time of the garnishee's answer) become final in the sense of no longer being subject to being set aside on appeal. In other words,
 
 Scheuing
 
 apparently confused the requirements applicable to the debt owed by the garnishee to the debtor in garnishment with those applicable to the debt owed by the debtor in garnishment to the garnishor. It was this confusion which Rule 657 rectified.
 

 [9]
 

 . Under the wording of article 4084, and Rules 661 and 668, Texas Rules of Civil Procedure, the garnishment traps the indebtedness owed when the writ was served as well as that owed when the garnishee's answer is filed. Thus, payment after service of the writ, but before the garnishee’s answer, does not reduce the amount of "trapped” indebtedness.
 
 See, e.g., Westridge Villa Apartments v. Lakewood Bank And Trust Company,
 
 438 S.W.2d 891, 894 (Tex.Civ.App.— Fort Worth 1969, writ ref'd n.r.e.). Mutual argues that this is inapplicable because here the writs were not properly served on it. However, Mutual never raised this contention, either in the garnishment proceedings or in the courts below, and it is simply too late for it to do so now.
 

 [10]
 

 .
 
 But see Harris v. Great Southern Life Insurance Company,
 
 558 F.Supp. 689, 693 (M.D.Fla.1983) (under Florida law, in order for plaintiff to be entitled to relief by interpleader, he must seek relief before any of claimants to common fund secures a judgment in its favor).
 

 [11]
 

 . One authority states that it has
 

 "... been often stated — although rarely held— that interpleader is properly denied when the stakeholder is ... guilty of laches .... In view of the inequity stemming from the imposition of multiple and inconsistent liability, which the interpleader device was designed to prevent, courts are loathe to deny a stakeholder interpleader relief when he is in legitimate fear of incurring such liability; culpability on his part is more commonly reflected in a denial of costs and counsel fees than in a denial of interpleader altogether.” 3A
 
 Moore's Federal Practice
 
 ¶22.16[1] (1984) (footnotes omitted).
 

 See also Murphy v. Travelers Insurance Company,
 
 534 F.2d 1155, 1164 (5th Cir.1976) (may be appropriate to award costs against stakeholder if the interpleader action was improvident, vexatious, or improper).
 

 [12]
 

 .Mutual contends that the district court improperly applied the clearly erroneous standard to review the bankruptcy court’s findings. While not disputing that laches is a question of fact, Mutual argues that the submission of this case on stipulated facts “diminished considerably” the deference usually accorded a trial court's findings, as the court had no opportunity to observe witnesses and to make credibility determinations.
 

 It is well-established that an appellate court must apply the clearly erroneous standard in reviewing the fact-findings of a trial court. Fed. R.Civ.P. 52(a);
 
 Onaway Transport Co. v. Offshore Tugs, Inc.,
 
 695 F.2d 197 (5th Cir.1983). It is also established that this standard applies to factual inferences drawn from undisputed facts.
 
 Commissioner v. Duberstein,
 
 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). This Court has held, however, that where a case is presented wholly on documents rather than through live witnesses, a trial court’s findings should receive somewhat less deference.
 
 Onaway,
 
 695 F.2d at 200 (" ’[T]he burden of proving the district court’s findings clearly erroneous "is to some extent ameliorated.” ’ ”) (quoting
 
 Stevens v. East-West Towing Co., Inc.,
 
 649 F.2d 1104, 1106 (5th Cir.1981)). Despite this amelioration,
 
 *326
 
 however, we can overturn a trial court’s findings only if after reviewing the "entire evidence” we are "left with the definite and firm conviction that a mistake has been committed.”
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 See Ona-way,
 
 695 F.2d at 200. The district court applied the proper standard.
 

 [13]
 

 . Insofar as the finding of unreasonable delay may have been based, as it apparently was in part, on Mutual’s knowledge of Bohart’s status as one asserting a claim to the policy proceeds, it is unsupported by the record before us. Of course. Mutual always knew, as did Bohart, Universal, and Citibank, that the policy proceeds were payable to Bohart. But Universal’s garnishment, and Citibank’s attachment, were assertions not of independent claims but of Bo-hart's claims. It is settled that the effect of a garnishment is to substitute the garnishor for his debtor in asserting the latter’s claim against the garnishee.
 
 See Beggs v. Fite,
 
 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937). Hence, Bohart’s individual claim is not a separate claim. The one arguable exception to this is Bohart’s assertion that the policy proceeds were exempt. However, there is no evidence or finding that this claim was ever made prior to May 14, 1976, or that Mutual was or should have been aware of it prior to Bohart’s answer in the interpleader (Mutual’s interpleader complaint does reflect that it was informed that Bohart and the Trustee claimed the garnishment and attachment were invalid preferences, but there is no indication in this pleading, nor any evidence in the record, when Mutual first became aware of that position). Bohart was previously at all times aware of both the garnishment and the attachment, which suspended the policy payments to him and were ancillary to the suits against him, and there is no evidence or finding to the contrary. Nor is there any evidence or finding that Bohart attempted, or would have been unable, to intervene in either proceeding or ever requested Mutual to assert an exemption on his behalf or even informed Mutual of his subsequently claimed exemption. There is nothing to indicate that the facts relevant to an exemption under article 21.22, Texas Insurance Code, were not evident on the face of the garnishment and attachment proceedings. Nor is there any indication that these facts were ever unknown to Bohart, Universal, or Citibank. Comparable observations are applicable to the Trustee’s claim that the garnishment and attachment were preferences. Laches, of course, is an affirmative defense, and the party asserting it has the burden of proof.
 
 See Environmental Defense Fund v. Alexander,
 
 614 F.2d 474, 478 (5th Cir.),
 
 cert. denied,
 
 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980);
 
 City of Fort Worth v. Johnson, 388
 
 S.W.2d 400, 403 (Tex. 1964); Fed.R.Civ.P. 8(c).
 

 [14]
 

 . If Mutual were to be liable to Bohart for not successfully setting up an exemption claim in the Citibank attachment, it is not shown that the interpleader would have prejudiced Bohart's ability to assert and enforce any such liability. The same is true with respect to any claim of preference the Trustee may have had regarding the attachment. Nor is there any showing that the delay would have made it more difficult to make the necessary proof in respect to either claim.
 

 [15]
 

 . Similarly, neither Universal nor Citibank would have been prejudiced, with respect to any claim to the insurance proceeds as such, by the successful assertion by Bohart or Universal in the interpleader of their claims of exemption or preference, as in that case neither Universal nor Citibank would ever have had any valid claim to the proceeds in the first place. Nor is there any showing that the delay in filing the interpleader prejudiced either Universal or Citibank in their ability to prove that in fact the proceeds were not exempt or there was no preference.