**Vera Scott GIFFORD, Individually, and as Independent Executrix of the Estate of Earl Gifford, Plaintiff-Appellee,**

v.

**NATIONAL GYPSUM COMPANY, Defendant-Appellant.**

No. 83–2619.

United States Court of Appeals, Fifth Circuit.

March 1, 1985.

McGinnis, Holmes & Adams, Bryan James McGinnis, Beaumont, Tex., Lawrence T. Hoyle, Jr., Philadelphia, Pa., for defendant-appellant.

Archer, Peterson & Waldner, Marvin B. Peterson, Houston, Tex., Marlin Thompson, Paul Henderson, Orange, Tex., for plaintiff-appellee.

Before GOLDBERG, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Earl Gifford sued National Gypsum Company, contending that asbestos cement flatsheet sold by National Gypsum led to Gifford's contracting mesothelioma, a malignancy of the lungs caused by exposure to asbestos. After Gifford's death in November 1981, his wife was substituted as plaintiff in the case. The case was tried to a magistrate pursuant to 28 U.S.C. § 636(c). By his opinions dated January 27 and September 16, 1983, the magistrate held for the plaintiff, awarding damages in the amount of $80,000. National Gypsum appeals and contends that the magistrate's findings are clearly erroneous. We reject National Gypsum's contention and affirm.

## I. BACKGROUND

Earl Gifford worked as an electrician for most of his career on a variety of commercial and industrial projects in the area of Lexington, Kentucky. From 1948 to 1952, Gifford worked for Fayette Electric Company (Fayette). During his employment with Fayette, Gifford wired hundreds of what were formerly army barracks being reconstructed into apartments and dormitories for ex-servicemen and their families on college campuses throughout Kentucky and southern Ohio. While on the reconstruction projects, Gifford worked around carpenters installing $4' \times 8'$ boards that formed the interior walls and ceilings of the reconstructed buildings. In his deposition, Gifford identified the wallboard as asbestos cement flatsheet manufactured by the Gold Bond division of defendant National Gypsum Company. Gifford testified that he remembered the flatsheet to be Gold Bond because the flatsheets bore the Gold Bond label. In 1980, Gifford was diagnosed as suffering from mesothelioma. As noted above, Gifford died in November 1981.

National Gypsum, which is a Delaware corporation with its principal place of business in Texas, is a manufacturer and seller of construction products. Asbestos cement flatsheet is a portland cement product containing fifteen to twenty percent asbestos

fiber. Manufacturers and sellers recommend asbestos cement flatsheet for both interior and exterior use, especially where there is a danger of fire or of damage from moist conditions.

In holding for the plaintiff, the magistrate specifically found that asbestos cement flatsheet supplied by National Gypsum was used in the walls and ceilings of the reconstructed buildings on which Gifford worked. On this appeal, National Gypsum contends that this specific finding is clearly erroneous.

## II. DISCUSSION

■ National Gypsum's challenge to the magistrate's findings is governed by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). In applying this standard, it is well established that "credibility choices and the resolution of conflicting testimony are within the province of the court sitting without a jury, subject only to the clearly erroneous rule of Fed.R.Civ.P. 52(a)." *Rodriguez v. Jones,* 473 F.2d 599, 604 (5th Cir.), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 31 L.Ed.2d 1007 (1973).[1]

A. *Whether Asbestos Cement Flatsheet Was Used on the Reconstruction Projects*

■ National Gypsum argues that the evidence does not support the trial court's conclusion that asbestos cement flatsheet was used in the reconstruction projects on which Gifford worked. Rather, National Gypsum argues, it is much more probable that some other material, such as gypsum wallboard, was used in the reconstruction projects.

■ National Gypsum argues first that Gifford's testimony regarding exposure to asbestos during the reconstruction projects is contradicted by Gifford's statements to his treating physicians. While Gifford testified in his videotaped deposition that his only exposure to asbestos that he could recall occurred during his work on reconstruction of the barracks, medical records indicated that Gifford told his treating physicians that he had been exposed to asbestos throughout his career as an electrician. Where a witness' statement is contradicted by his own prior statements, the resolution of such conflicting evidence "remains the province of the district court." *Floyd v. Segars,* 572 F.2d 1018, 1022 (5th Cir.1978). In choosing to credit the statements that Gifford made under oath, the trial court did not clearly err.

National Gypsum also argues that tests performed on the "Scott Street" building at the University of Kentucky in Lexington demonstrate that asbestos material was not used in the reconstruction projects. The Scott Street Building was identified by J. Fred Miller, who had also worked on the reconstruction projects, as the only building of the project still standing. After the building was identified by Miller in his deposition, National Gypsum's expert witness, Jerry Williams, conducted tests on the walls and ceilings of the Scott Street building and found that they did not contain asbestos. This testimony, however, cannot be considered conclusive. The Scott Street Building differed from the other buildings upon which Gifford and Miller worked since the Scott Street building was used for

1. National Gypsum argues that a less deferential standard should apply in the instant case since the magistrate's findings were based in part on Gifford's videotaped deposition. This Court has noted that where a case is presented wholly on documents, rather than through live witnesses, a somewhat less deferent standard applies in reviewing the trial court's findings. *Mutual Life Insurance Co. of New York v. Bohart,* 743 F.2d 313, 325 n. 12 (5th Cir.1984). Even in cases resting wholly on a prepared written record, however, "we are still bound by the requirement that we can overturn such findings of fact only if upon reviewing 'the entire evidence' we are

'left with the definite and firm conviction that a mistake has been committed.'" *Onaway Transportation Co. v. Offshore Tugs, Inc.,* 695 F.2d 197, 200 (5th Cir.1983) (quoting *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954)). In the instant case, in which a major part of plaintiff's testimony was videotaped, it is not necessary to determine whether a less deferent standard applies; even assuming that the less deferent standard applies, an assessment of the "entire evidence" does not lead to "the definite and firm conviction that a mistake has been committed."

offices rather than living quarters. More-over, the trial court weighed National Gypsum's expert testimony against that of eye-witnesses; Miller, as well as the plaintiff-decedent Gifford, testified that asbestos cement flatsheet was used in constructing the buildings.[2]

Further, other testimony indicated that asbestos cement flatsheet was used in the reconstruction projects. Gifford testified that he recalled that the wallboard used in the reconstruction projects was nailed after the carpenters on the reconstruction projects drilled holes in the wallboard. Nailing wallboard after predrilling the holes in the fashion described by Gifford is consistent with the use of asbestos cement flatsheet; other types of wallboard, such as gypsum wallboard, is nailed without predrilling.[3]

Finally, National Gypsum contends that asbestos cement flatsheet would not have been used in the reconstruction projects because asbestos cement flatsheet is more brittle and generally less suitable than other types of wallboard (such as gypsum wallboard) for interior use. Plaintiff, however, introduced advertising stating that asbestos cement flatsheet was suitable for "dozens of uses that rule out ordinary interior or exterior wall materials."

Thus, on each of these arguments raised by National Gypsum, the trial court was confronted with conflicting evidence. From this conflicting evidence, the trial court credited the eyewitness testimony of Gifford and his co-worker (Miller) and concluded that asbestos cement flatsheet was used in the reconstruction projects. In doing so, it cannot be said that the trial court clearly erred.

### B. Whether the Asbestos Cement Flatsheet was Sold by National Gypsum

National Gypsum argues that even if asbestos cement flatsheet was used in the reconstruction projects, the flatsheet could not have been sold by National Gypsum. National Gypsum contends that it could not have possibly sold the asbestos cement flatsheet because the amount of wallboard that would have been required for the reconstruction projects far surpassed the amount of asbestos cement flatsheet sold by National Gypsum between 1948 and 1952 (the years that Gifford worked on the reconstruction projects). National Gypsum's testimony also indicated that it had shipped only a small amount of asbestos cement flatsheet into the Kentucky and Ohio area in the years 1949–1951.

The trial court refused to find this testimony by National Gypsum conclusive. Once again, in doing so, it cannot be said that the trial court clearly erred. The figures used by National Gypsum to calculate the amount of asbestos cement flatsheet sold in the years 1948–1952 were compiled by an employee who was not employed by National Gypsum at the time and who had no personal knowledge of National Gypsum's record keeping during the relevant period. As National Gypsum's testimony indicated, some of its best customers were lumber companies, and National Gypsum could not determine the end use of the product. The flatsheet used in reconstructing the barracks could have been sold by National Gypsum in adjoining states, in earlier years, or in other areas of the country.[4]

National Gypsum also argues that Gifford's testimony identifying the "Gold Bond" label of National Gypsum as the

**2.** Two other witnesses, Isaac Joe Ingram and John Willie Chism, stated that asbestos cement flatsheet was used in the reconstruction projects but that it was used only in special areas, such as behind a stove.

**3.** National Gypsum replies that Gifford's testimony is inconsistent in this respect since Gifford also stated the wallboard was taped and floated, rather than caulked. Taping and float-

ing is a method of joining more consistent with gypsum wallboard than asbestos cement flatsheet. However, Gifford initially stated that the wallboard was caulked and changed his reply to taping and floating only after counsel asked whether the wallboard was taped and floated.

**4.** National Gypsum had been in the business of selling asbestos cement flatsheet since 1943.

label on the flatsheet is not worthy of belief. Gifford identified the flatsheet as Gold Bond since he thought he remembered the Gold Bond label either on or with each sheet of asbestos cement flatsheet. National Gypsum countered Gifford's statement by testimony and documentary evidence that National Gypsum did not label the asbestos cement flatsheet that it sold. Given Gifford's emphatic identification of the product, however, the trial court chose Gifford's testimony and suggested that Gifford's identification of the material as being Gold Bond came from the instruction sheets, which indeed bore that name and which were packed with the flatsheets. Given this conflicting evidence, the trial court did not err in choosing Gifford's identification of the asbestos cement flatsheet as being sold by the Gold Bond division of National Gypsum.

## III. CONCLUSION

Accordingly, the judgment of the trial court in favor of the plaintiff is

AFFIRMED.